UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JACARL HARLAN, #226926,

      Petitioner,

v.                                CASE NO. 2:09-CV-14524
                                    HONORABLE PAUL D. BORMAN

BLAINE LAFLER,

      Respondent.

_____/

## OPINION AND ORDER DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS, DENYING A CERTIFICATE OF APPEALABILITY, AND DENYING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL

### I.    Introduction

This is a habeas case brought pursuant to 28 U.S.C. § 2254. Michigan prisoner Jacarl Harlan

("Petitioner") was convicted of four counts of assault with intent to do great bodily harm, MICH.

COMP. LAWS § 750.84, following a jury trial in the Wayne County Circuit Court. He was sentenced

as a fourth habitual offender, MICH. COMP. LAWS § 769.12, to concurrent terms of 9½ years to 30

years imprisonment on those convictions in 2005. In his pleadings, Petitioner raises claims

concerning the denial of substitute counsel, the admission of testimony, the effectiveness of trial and

appellate counsel, his right to confront witnesses, his right to present a defense, the trial judge's ex

parte communications with the jury, and his habitual offender enhancement. For the reasons set

forth, the Court denies the petition for a writ of habeas corpus. The Court also denies a certificate

of appealability and denies leave to proceed *in forma pauperis* on appeal.

## II.    **Facts and Procedural History**

Petitioner's conviction arises from a drive-by shooting in Detroit, Michigan on June 29,

2005. The Michigan Court of Appeals provided a summary of the facts, which is presumed correct

on habeas review, *see Monroe v. Smith*, 197 F. Supp. 2d 753, 758 (E.D. Mich. 2001), *aff'd.* 41 F.

App'x 730 (6th Cir. 2002), as follows:

> On the evening of June 29, 2005, Crystal Cowan was driving with her boyfriend, Roosevelt Pettiford, his son Martinez, age 11, and her two small children. When Pettiford saw his friend Mike arguing with defendant Hatchett (a/k/a "Glover") on the street, Pettiford told Cowan to pull over. Pettiford left the car and tried to stop the argument. Defendant Harlan (a/k/a "J.C.") exited a parked van, approached the others, and attempted to stop the argument. During the argument, Hatchett told Pettiford that he was tired of people disrespecting him and that "he better get his boy [Mike] before he kill him." Harlan and Hatchett then returned to the van and drove away. Pettiford returned to Cowan's car, a rented convertible with the top down and the windows up. Cowan drove to a house around the block where Pettiford exited. She then proceeded with the children to her grandmother's house.
>
> On the way, Cowan pulled over to the side of the road to secure one of the children into a child seat. While Cowan was stopped, a car driven by Harlan with Hatchett sitting in the passenger seat drove up next to Cowan's car. Hatchett pulled out a black semi-automatic handgun and fired a shot at the driver's door of Cowan's car. Cowan reversed the car to flee the assault by backing down the street. Harlan also reversed his car to pursue Cowan. As Harlan and Hatchett again approached Cowan's car, Hatchett fired a second shot that hit the driver's side front window and a third shot that hit the front diver's side tire. Harlan and Hatchett then drove off. After the tire was changed, Cowan drove to the police station.
>
> At the police station, Cowan spoke with police officer Raytheon Martin at the front desk and provided him with the names of "Glover" and "J.C." as her alleged assailants. Cowan then identified two photographs as "Glover" and "J.C.," *i.e.*, Hatchett and Harlan.
>
> Hatchett and Harlan were arrested. Hatchett was charged with four counts each of assault with intent to murder, assault with intent to do great bodily harm, felonious assault, and one count each of felon-in-possession and felony-firearm. Harlan was charged with four counts each of assault with intent to murder and of assault with intent to do great bodily harm.

2

At a pretrial conference, about a month before trial, Harlan orally moved to substitute his appointed defense counsel. The trial judge interrupted Harlan without hearing his reasons and informed him that he could hire his own attorney but that his appointed counsel was a good attorney. Harlan's appointed counsel was not substituted.

At trial, Cowan was the principal witness for the prosecution and essentially testified to the events as related above. Cowan testified that she heard Hatchett tell Pettiford that he (Hatchett) was tired of people disrespecting him, and that Pettiford had "better get his boy [Mike] before [I] kill him." Hatchett's defense counsel objected, arguing that Hatchett's statement was not an admission but was inadmissible hearsay. The trial judge allowed it as an admission by a party opponent.

Neither Hatchett nor Harlan testified at trial. Counsel for Hatchett and Harlan essentially argued to the jury that there was insufficient evidence that the incident even occurred, that Cowan's allegations were inconsistent, unreliable, and uncorroborated, and that even if the incident occurred, there was insufficient evidence that they assaulted Cowan and the children with the requisite intent to murder them or to commit great bodily harm.

Hatchett and Harlan were convicted as described above. Both defendants were acquitted of all counts of assault with intent to murder, MCL 750.83.

Harlan moved for post-conviction relief based on the failure of his defense counsel to interview Martinez Pettiford, the 11-year-old passenger, and asked for an evidentiary hearing and for assistance from the prosecutor in locating Martinez. The trial judge denied the motion finding that defense counsel was aware of Martinez as a victim and potential *res gestae* witness and, as a matter of trial strategy, reasonably decided not to call Martinez.

*People v. Harlan*, No. 265241, 2007 WL 1263995, *1-2 (Mich. Ct. App. May 1, 2007) (unpublished).

Following his convictions and sentencing, Petitioner filed an appeal of right with the Michigan Court of Appeals asserting that: (1) the trial court abused its discretion by failing to fully hear his reasons for requesting new trial counsel and determine whether appointed counsel was performing adequately or the attorney-client relationship had broken down, (2) Officer Martin's testimony violated his right of confrontation because out-of-court testimonial statements by a witness

3

are excluded unless the witness is unavailable and the defendant had a prior opportunity for cross-examination, and (3) defense counsel was ineffective for failing to interview Martinez Pettiford, the 11-year-old passenger in Cowan's car, to determine if the boy saw him driving the other car. The court denied relief on those claims and affirmed Petitioner's convictions. *Id.* at *4-7. Petitioner then filed an application for leave to appeal with the Michigan Supreme Court, which was denied in a standard order. *People v. Harlan*, 480 Mich. 858, 737 N.W.2d 512 (2007).

Petitioner subsequently filed a motion for relief from judgment with the trial court asserting that: (1) the admission of Investigator Shaw's testimony regarding another officer's investigation reports violated his confrontation rights, (2) trial counsel was ineffective for failing to contact the rental/repair shop that fixed the victim's car, for failing to present an adequate defense, and for failing to engage in the jury instruction process, (3) the exclusion of a defense witness intended to attack the victim's credibility violated his confrontation rights, (4) the trial court engaged in improper ex parte communications with the jury, and (5) his habitual offender sentence was invalid due to untimely notice of the enhancement. The trial court denied the motion, finding that the claims were barred by procedural default and that Petitioner had not shown good cause and/or actual prejudice under Michigan Court Rule 6.508(D)(3) to excuse his failure to raise the claims on direct appeal of his convictions. Petitioner filed an application for leave to appeal with the Michigan Court of Appeals, which was denied "for failure to establish entitlement to relief under M.C.R. 6.508(D)." *People v. Harlan*, No. 288001 (Mich. Ct. App. April 23, 2009) (unpublished). Petitioner also filed an application for leave to appeal with the Michigan Supreme Court, which was similarly denied. *People v. Harlan*, 485 Mich. 927, 773 N.W.2d 676 (2009).

Petitioner thereafter instituted this federal habeas action raising the claims presented to the

4

state courts on direct appeal and collateral review of his convictions. Respondent has filed an answer to the petition contending that it should be denied because the claims lack merit and/or are barred by procedural default.

## III.   **Standard of Review**

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified 28 U.S.C. § 2241 *et seq.*, govern this case because Petitioner filed his petition after the AEDPA's effective date. *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997). The AEDPA provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d) (1996).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)); *see also Bell v. Cone*, 535 U.S. 685, 694 (2002). "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts of petitioner's case."

5

*Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also Williams*, 529 U.S. at 409. The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, _ U.S. _, 130 S. Ct. 1855, 1862 (2010) (quoting *Lindh*, 521 U.S. at 333, n. 7; *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (per curiam)).

The Supreme Court recently held that "a state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, _ U.S. _, 131 S. Ct. 770, 786 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)). Pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.* Thus, in order to obtain habeas relief in federal court, a state prisoner must show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.*

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme

6

Court at the time the state court renders its decision. *See Williams*, 529 U.S. at 412; *see also Knowles v. Mirzayance*, _ U.S. _, 129 S. Ct. 1411, 1419 (2009) (noting that the Supreme Court "has held on numerous occasions that it is not 'an unreasonable application of clearly established Federal law' for a state court to decline to apply a specific legal rule that has not been squarely established by this Court") (quoting *Wright v. Van Patten*, 552 U.S. 120, 125-26 (2008) (per curiam)); *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). Section 2254(d) "does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" *Harrington*, 131 S. Ct. at 785. Furthermore, it "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002); *see also Mitchell*, 540 U.S. at 16. While the requirements of "clearly established law" are to be determined solely by Supreme Court precedent, the decisions of lower federal courts may be useful in assessing the reasonableness of the state court's resolution of an issue. *See Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007) (citing *Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003)); *Dickens v. Jones*, 203 F. Supp. 354, 359 (E.D. Mich. 2002).

A state court's factual determinations are presumed correct on federal habeas review. *See* 28 U.S.C. § 2254(e)(1). A habeas petitioner may rebut this presumption only with clear and convincing evidence. *See Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998). Moreover, habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, _ U.S. _, 131 S. Ct. 1388, 1398 (2011).

7

IV.    **Analysis**

A.    **Substitute Counsel Claim**

Petitioner first asserts that he is entitled to habeas relief because the trial court failed to conduct a proper inquiry into his request for substitute counsel and denied that request. Respondent contends that this claim lacks merit.

The Sixth Amendment provides, in relevant part, that "[i]n all criminal prosecutions the accused shall enjoy the right ... to have the Assistance of Counsel for his defense." U.S. CONST. AMEND. VI. The right to counsel encompasses the right to counsel of choice, but that right is generally cognizable only to the extent defendant can retain counsel with private funds; an indigent defendant does not have an absolute right to choose appointed counsel. *See United States v. Gonzalez-Lopez*, 548 U.S. 140, 151 (2006). The right to counsel of one's choice is not absolute, and "is circumscribed in several important respects." *Wheat v. United States*, 486 U.S. 153, 159 (1988). The United States Supreme Court has recognized a trial court's wide latitude in balancing the right to counsel of choice against the needs of fairness, *id.* at 163-64, and against the demands of its calendar. *Morris v. Slappy*, 461 U.S. 1, 11-12 (1983). Furthermore, "a court must beware that a demand for counsel may be utilized as a way to delay proceedings or trifle with the court." *United States v. Krzyske*, 836 F.2d 1013, 1017 (6th Cir. 1988). Moreover, "while the right to select and be represented by one's preferred attorney is comprehended by the Sixth Amendment, the essential aim of the Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." *Wheat*, 486 U.S. at 159.

Because an indigent defendant has no absolute right to appointed counsel of choice and

8

because the focus of the Sixth Amendment inquiry is on effective advocacy, a criminal defendant

who is dissatisfied with appointed counsel must show "good cause" to warrant the substitution of

counsel. *United States v. Iles*, 906 F.2d 1122, 1130 (6th Cir. 1990). Good cause includes "a

conflict of interest, a complete breakdown in communication or an irreconcilable conflict with [an]

attorney." *Wilson v. Mintzes*, 761 F.2d 275, 280 (6th Cir. 1985). The decision regarding whether

to appoint new counsel at a defendant's request is committed to the sound discretion of the trial

court. *United States v. Trujillo*, 376 F.3d 593, 606 (6th Cir. 2004).

The United States Court of Appeals for the Sixth Circuit has cited three factors to consider

when evaluating a trial court's denial of a request for substitute counsel: (1) the timeliness of the

motion; (2) the adequacy of the court's inquiry into the defendant's complaint; and (3) whether the

conflict between the attorney and the defendant was so great that it resulted in a total lack of

communication preventing an adequate defense. *See Benitez v. United States*, 521 F.3d 625, 632

(6th Cir. 2008) (citing *Iles*, 906 F.2d at 1131, n.8). These factors are balanced with the public's

interest in the prompt and efficient administration of justice. *See Iles*, 906 F.2d at 1131, n. 8 (citing

*Wilson*, 761 F.2d at 280); *see also United States v. Mack*, 258 F.3d 548, 556 (6th Cir. 2001).

With such standards in mind, the Michigan Court of Appeals denied relief on Petitioner's

substitute counsel claim, stating in relevant part:

> We review the denial of a motion to substitute appointed counsel for an abuse of
> discretion. *See People v. Bauder*, 269 Mich App 174, 194; 712 NW2d 506 (2005).
>
> Under the federal and state constitutions, an indigent defendant is guaranteed the
> right to counsel. US Const, Am VI; Const 1963, art 1, § 20. However, after counsel
> is appointed, an indigent defendant is not entitled to substitution of the attorney
> simply upon request. *Bauder, supra* at 193. Rather, substitution is warranted only
> if good cause is shown and if substitution will not unreasonably disrupt the judicial
> process. *Id*. Good cause exists when a legitimate difference of opinion develops

9

between a defendant and his appointed counsel with regard to a fundamental trial tactic. *People v. Williams*, 386 Mich 565, 574; 194 NW2d 337 (1972); *Bauder, supra* at 193; *People v. Mack*, 190 Mich App 7, 14; 475 NW2d 830 (1991).

When a defendant asserts that his assigned attorney is not adequate or diligent, or is disinterested, the trial court should hear the defendant's claim and, if there is a factual dispute, take testimony and state its findings and conclusion on the record. *People v. Ginther*, 390 Mich 436, 441-442; 212 NW2d 922 (1973); *Bauder, supra* at 193.

In this case, Harlan asked that his appointed counsel be allowed to step down, but did not formally request that new counsel be appointed to assist him. Moreover, when the trial court advised Harlan that he could hire an attorney in place of the court-appointed counsel, he replied, "Okay." Harlan never stated that he was financially unable to hire another attorney and that he needed another appointed counsel. Assuming that Harlan's request that counsel be allowed to step·down contained an implicit request for the appointment of new counsel, defendant did not proffer reasons establishing good cause for the substitution. Granted, the trial court interrupted Harlan as he was beginning to explain his unhappiness with appointed counsel, but he never attempted to explain why substitute counsel was necessary even though he had several later opportunities to address the court. Under the circumstances, we hold that the trial court was not obliged under *Ginther* and *Bauder* to schedule a hearing on whether Harlan had good cause to request substitute appointed counsel. Harlan had to do more than simply request that his appointed counsel be allowed to step down.

Furthermore, to this date, Harlan has not shown good cause to obtain the appointment of new counsel. He has not submitted an affidavit detailing either a conflict between himself and his attorney over basic trial strategy or tactics or the inadequacy of appointed counsel so as to demonstrate the need for a hearing to establish a record on this issue. In the absence of any such showing, there is no reason to direct a hearing now. Finally, we would note that defense counsel secured Harlan's acquittal on the four most serious counts of assault with intent to murder. It seems unlikely that Harlan could establish the good cause necessary to obtain substitute counsel.

*Harlan*, 2007 WL 1263995 at *5.

The Michigan Court of Appeals' decision is neither contrary to Supreme Court precedent

nor an unreasonable application of federal law or the facts. Petitioner has not shown that there was

good cause for the substitution of appointed counsel under the multi-factor test employed by the

Sixth Circuit. While the second factor, the adequacy of the court's inquiry, clearly weighs in Petitioner's favor due to the trial court's lack of inquiry into his complaints, the other factors do not. The first factor, the timeliness of the request, weighs against Petitioner because his request for substitute counsel at the final pre-trial conference a month before trial was untimely. *See United States v. Chambers*, 441 F.3d 438, 447 (6th Cir. 2006) (ruling that request for substitute counsel made one and a half months before trial was untimely). The third factor, whether a conflict between counsel and Petitioner was so great that it resulted in a total lack of communication preventing an adequate defense, weighs against Petitioner because he has not shown that there was any such conflict. Petitioner never articulated a basis for his substitute counsel request in the state courts, nor has he presented facts to this Court which demonstrate that he and counsel were unable to communicate or work together to present an adequate defense at trial. While Petitioner asserts that trial counsel was ineffective in certain respects, he has not substantiated those allegations – and neither the state courts nor this Court have found those claims to be meritorious. *See* discussion *infra.* To be sure, the record indicates that trial counsel was able to secure an acquittal on the four most serious charges of assault with intent to commit murder, which significantly reduced Petitioner's potential maximum sentence. The last factor, the public's interest in the prompt and efficient administration of justice, also weighs against Petitioner because the substitution of counsel would likely have delayed the trial and would have resulted in additional costs to the parties and the court. Petitioner has thus failed to establish that the substitution of trial counsel was warranted. More importantly, for purposes of federal habeas review, he has not shown that the state court's ruling on this issue was unreasonable.

Furthermore, even assuming that the trial court erred by not sufficiently inquiring into the

11

nature of Petitioner's complaints and denying his request for substitute counsel, Petitioner is still not entitled to relief because any such error was harmless. For purposes of federal habeas review, a constitutional error that implicates trial procedures is considered harmless if it did not have a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993); *see also Fry v. Pliler*, 551 U.S. 112, 117-18 (2007) (confirming that *Brecht* standard applies in "virtually all" habeas cases); *Ruelas v. Wolfenbarger*, 580 F.3d 403 (6th Cir. 2009) (ruling that *Brecht* is "always the test" in this circuit). Federal courts have applied harmless error analysis to claims concerning the substitution of appointed counsel. *See United States v. Wilhite*, 108 F. App'x 367, 370 (6th Cir. 2004) (finding any error in court's denial of substitute counsel motion to be harmless due to overwhelming evidence of guilt); *Bowie v. Renico*, No. 00-10013, 2002 WL 31749162, *11 (E.D. Mich. Nov. 6, 2002) (Lawson, J.); *accord United States v. John Doe No. 1*, 272 F.3d 116, 123 (2d Cir. 2001) (ruling that "if the reasons proffered are insubstantial and the defendant receives competent representation from counsel, a court's failure to inquire sufficiently or to inquire at all constitutes harmless error"); *United States v. Calderon*, 127 F.2d 1314, 1343 (11th Cir. 1997); *United States v. Graham*, 91 F.3d 213, 217 (D.C. Cir. 1996) ("[u]nless [a defendant] can establish an ineffective assistance claim under *Strickland v. Washington* . . . any error in the [trial] court's disposition of [the defendant's] motion for appointment of substitute counsel is harmless"); *United States v. Zillges*, 978 F.2d 369, 372-73 (7th Cir. 1992); *Stephens v. Costello*, 55 F. Supp. 2d 163, 171-72 (W.D.N.Y. 1999) (court's failure to inquire into substitute counsel request subject to harmless error review). As the Supreme Court has explained, "those who do not have the means to hire their own lawyers have no cognizable complaint so long as they are adequately represented by attorneys appointed by the courts." *Caplin*

12

& *Drysdale, Chartered v. United States*, 491 U.S. 617, 624 (1989). Because, as explained *infra*, Petitioner was not denied the effective assistance of counsel, he has "no cognizable complaint." Any error in the handling of his substitute counsel request was harmless. Habeas relief is not warranted on this claim.

**B.     Confrontation and Due Process Claim**

Petitioner next asserts that he is entitled to habeas relief because the trial court violated his confrontation and due process rights by allowing Officer Martin to testify and discuss his police report even though Martin had suffered a head injury and could no longer recall events from memory. Respondent contends that this claim lacks merit.

The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him. . . ." U.S. CONST. AMEND. VI. The Confrontation Clause thus guarantees a criminal defendant the right to confront the witnesses against him. *See Davis v. Alaska*, 415 U.S. 308, 315 (1973). The main purpose of confrontation is to secure the opportunity for cross-examination. *Delaware v. Van Arsdall*, 475 U.S. 673, 678 (1986). "Ordinarily, a witness is regarded as 'subject to cross-examination' when he is placed on the stand, under oath, and responds willingly to questions." *United States v. Owens*, 484 U.S. 554, 561 (1988) (admission of witness's prior identification statement did not violate Confrontation Clause or Federal Rules of Evidence even though witness could not recall basis for identification).

The right to confrontation bars the admission of testimonial statements of a witness who does not appear at trial, unless the witness is unavailable to testify and the defendant had a prior opportunity for cross-examination. *See Crawford v. Washington*, 541 U.S. 36, 68 (2004).

13

Testimonial statements include preliminary hearing testimony, grand jury testimony, prior trial testimony, and statements made during police interrogations. *Id.* at 54. Testimonial statements do not include remarks made to family members or acquaintances, business records, or statements made in furtherance of a conspiracy. *Id.* at 51-52, 56; *United States v. Martinez*, 430 F.3d 317, 328-29 (6th Cir. 2005); *see also United States v. Stover*, 474 F.3d 904, 912-13 (6th Cir. 2007).

The Michigan Court of Appeals denied relief on this claim finding that any error in admitting Officer Martin's testimony was harmless. The court explained:

> In this case, assuming that there was error in admitting the testimony, the admission of the testimony of Officer Martin as to Cowan's statement to the police was harmless error and did not prejudice Harlan because Martin did not testify about anything substantive in the report. Martin testified that the color of Cowan's car was red but was uncertain whether he saw the car or whether Cowan told him the color because he did not have an independent recollection of the contents of the report after he suffered a head injury. The bulk of Martin's testimony essentially explained the process involved in preparing a report. Based on the record, it is clear beyond a reasonable doubt that the jury verdict would have been the same absent officer Martin's testimony relating to the report.

*Harlan*, 2007 WL 1263995 at *6.

The Michigan Court of Appeals' decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. First, the admission of Officer Martin's testimony did not result in a constitutional violation. The Confrontation Clause guarantees only "an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985) (per curiam). The Confrontation Clause "places no constraints at all" on the use of a witness's prior testimonial statements when the declarant is subject to cross-examination at trial. *Crawford*, 541 U.S. at 60 n. 9. Thus, when a witness suffers from memory loss, "the Confrontation

14

Clause is generally satisfied when the defense is given a full and fair opportunity to probe and expose these infirmities through cross-examination, thereby calling to the attention of the factfinder the reasons for giving scant weight to the witness's testimony." *Owens*, 484 U.S. at 558. Simply put, the Confrontation Clause is "not violated by the admission of hearsay evidence when the witness's memory fails at trial." *Bugh v. Mitchell*, 329 F.3d 496, 508 (6th Cir. 2003) (discussing *Owens*); *see also United States v. Kappell*, 418 F.3d 550, 556 (6th Cir. 2005); *accord Beltran v. Runnels*, 409 F. App'x 997, 998 (9th Cir. 2011); *Yanez v. Minnesota*, 562 F.3d 958, 964 (8th Cir. 2009) ("A witness's inability to recall either the underlying events that are the subject of an extra-judicial statement or previous testimony or recollect the circumstances under which the out-of-court statement was given does not have Sixth Amendment consequence."); *Cookson v. Schwartz*, 556 F.3d 647, 651-52 (7th Cir. 2009); *United States v. Bliss*, 188 F. App'x 13, 16 (2d Cir. 2006). In this case, Officer Martin testified at trial, was subject to cross-examination, and disclosed his memory problems. The victim, Ms. Cowan, also testified at trial and was subject to cross-examination. Petitioner has thus failed to establish a violation of his confrontation rights.

Second, the admission of Officer Martin's testimony did not violate due process. Alleged trial court errors in the application of state evidentiary law are generally not cognizable as grounds for federal habeas relief. *See Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991); *Serra v. Michigan Dep't of Corrections*, 4 F.3d 1348, 1354 (6th Cir. 1993). "Trial court errors in state procedure and/or evidentiary law do not rise to the level of federal constitutional claims warranting relief in a habeas action, unless the error renders the proceeding so fundamentally unfair as to deprive the petitioner of due process under the Fourteenth Amendment." *McAdoo v. Elo*, 365 F.3d 487, 494 (6th Cir. 2004) (quoting *McGuire*, 502 U.S. at 69–70); *see also Wynne v. Renico*, 606 F.3d 867, 871

15

(6th Cir. 2010) (citing *Bey v. Bagley*, 500 F.3d 514, 519-20 (6th Cir. 2007)). Under the circumstances presented, where Officer Martin and Ms. Cowan both testified and were subject to cross-examination, and the jury was well aware of Officer Martin's memory loss, the admission of Officer Martin's testimony and the references to his police report were not "so extremely unfair" as to violate "fundamental conceptions of justice." *Dowling v. United States*, 493 U.S. 342, 352 (1990); *see also Burbine v. Scribner*, No. CIV S-04-1691 LKK EFB P, 2009 WL 2136303, at *12 (E.D. Cal July 15, 2009) (denying habeas relief on similar due process claim).

Lastly, even if the trial court erred in admitting such testimony, Petitioner is not entitled to relief because any such error was harmless. As explained *supra*, for purposes of federal habeas review, a constitutional error that implicates trial procedures is considered harmless if it did not have a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 637. Confrontation errors, like other trial errors, are subject to harmless error analysis. *See Delaware v. VanArsdall*, 475 U.S. 673, 684 (1986). In this case, Officer Martin did not provide much in the way of substantive testimony. For the most part, he discussed his role in taking the victim's preliminary report of the incident and his testimony was not inculpatory. He also acknowledged his memory problem. Moreover, the victim's testimony alone provided significant evidence of Petitioner's guilt at trial. Any error in admitting Officer Martin's testimony was harmless under the *Brecht* standard. Habeas relief is therefore not warranted on this claim.

## C.   Ineffective Assistance of Trial Counsel Claims

Petitioner also asserts that he is entitled to habeas relief because trial counsel was ineffective for failing to object to Officer Martin's testimony and for failing to interview 11-year-old car passenger Martinez Pettiford about his view of the crime and whether he saw Petitioner driving the

16

other vehicle.  Respondent contends that these claims lack merit.

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to the effective assistance of defense counsel.  In *Strickland v. Washington*, 466 U.S. 668 (1984), the United States Supreme Court set forth a two-prong test for determining whether a habeas petitioner has received the ineffective assistance of counsel.  First, a petitioner must prove that counsel's performance was deficient.  This requires a showing that counsel made errors so serious that he or she was not functioning as counsel as guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687.  Second, the petitioner must establish that counsel's deficient performance prejudiced the defense.  Counsel's errors must have been so serious that they deprived the petitioner of a fair trial or appeal. *Id.*

As to the performance prong, a petitioner must identify acts that were "outside the wide range of professionally competent assistance" in order to prove deficient performance. *Id.* at 690. The reviewing court's scrutiny of counsel's performance is highly deferential. *Id.* at 689.  Counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id.* at 690.  The petitioner bears the burden of overcoming the presumption that the challenged actions were sound trial strategy. *Id.* at 689.

To satisfy the prejudice prong under *Strickland*, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.  A reasonable probability is one that is sufficient to undermine confidence in the outcome. *Id.*  "On balance, the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result."

17

*Strickland*, 466 U.S. at 686.

The Supreme Court has recently confirmed that a federal court's consideration of ineffective assistance of counsel claims arising from state criminal proceedings is quite limited on habeas review due to the deference accorded trial attorneys and state appellate courts reviewing their performance. "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Harrington*, 131 S. Ct. at 788 (internal and end citations omitted). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard. *Id.* at 788.

Petitioner first asserts that trial counsel was ineffective for failing to object to Officer Martin's testimony. The Michigan Court of Appeals denied relief on this claim, finding that Petitioner could not establish that counsel was ineffective because any error in admitting the testimony was harmless. *Harlan*, 2007 WL 1263995 at *6. This decision is neither contrary to Supreme Court precedent nor an unreasonable application thereof. Given this Court's determination that no error occurred and that any error was harmless, Petitioner cannot establish that counsel was ineffective. Counsel cannot be deemed ineffective for failing to make a futile objection or motion. *See, e.g., United States v. Steverson*, 230 F.3d 221, 225 (6th Cir. 2000).

Petitioner next asserts that trial counsel was ineffective for failing to interview Martinez Pettiford, the 11-year-old passenger in Cowan's car, to determine whether he saw Petitioner driving the car involved in the shooting. Well-established federal law requires that counsel conduct a reasonable investigation into the facts of a defendant's case, or to make a reasonable determination that such investigation is unnecessary. *Wiggins*, 539 U.S. at 522-23; *Strickland*, 466 U.S. at 691;

18

*Stewart v Wolfenbarger*, 468 F.3d 338, 356 (6th Cir. 2007); *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005). The duty to investigate "includes the obligation to investigate all witnesses who may have information concerning his or her client's guilt or innocence." *Towns*, 395 F.3d 251 at 258. Decisions as to what evidence to present and whether to call certain witnesses, however, are presumed to be matters of trial strategy. When making strategic decisions, counsel's conduct must be reasonable. *See Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000); *see also Wiggins*, 539 U.S. at 522-23. The failure to call witnesses or present other evidence constitutes ineffective assistance of counsel only when it deprives a defendant of a substantial defense. *See Chegwidden v. Kapture*, 92 F. App'x 309, 311 (6th Cir. 2004); *Hutchison v. Bell*, 303 F.3d 720, 749 (6th Cir. 2002).

Applying the foregoing legal principles, the Michigan Court of Appeals ruled that Petitioner had failed to show that trial counsel was ineffective and denied relief on this claim. *Harlan*, 2007 WL 1263995 at *6-7. The court explained in part:

> In this case, the primary defense strategy was to challenge the credibility of Cowan, the prosecution's principal witness. Although defense counsel knew about Martinez, the record does not show that he interviewed the boy. Nevertheless, we hold that defense counsel's failure to call Martinez as a witness was not objectively unreasonable. Whatever the content of Martinez's testimony, it would be problematic for Harlan as a matter of trial strategy. The record indicates that all the children were afraid, screaming, and ducking down onto the floor and backseat during the gunfire. Hence, even if Martinez was called to testify and had stated that he did not see Harlan, the prosecution could have explained that this was because the boy feared for his life and he had failed to notice Harlan because he was ducking for cover to avoid being shot. Moreover, the appearance of Martinez as a witness and child victim of an alleged assault by Harlan would naturally arouse sympathy in the jury for Martinez and against Harlan. Thus, defense counsel had a reasonable basis for not pursuing Martinez. Furthermore, even favorable testimony from Martinez would not have created a substantial defense because there is no reasonable probability that the result of the proceeding would have been different given Cowan's testimony. Cowan testified that she knew Harlan from the neighborhood for ten years and that Harlan was the driver of the car. However, Martinez was a scared 11-year-old child who ducked down onto the floor of the car

19

to avoid the gunfire. Ineffective assistance of counsel has not been established....

*Id.* at *7.

The Michigan Court of Appeals' decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. First, Petitioner has failed to establish that counsel erred by not interviewing or producing Martinez as a witness. Trial counsel may have reasonably decided not to interview or present the testimony of Martinez (or any of the children in the car) due to his age, his relationship with Cowan, his position in the car, and the likely effect on the jury. Trial counsel's decision to focus on attacking Cowan's credibility and the lack of physical evidence linking him to the crime was reasonable under the circumstances. As the Supreme Court has recently stated, "[t]here comes a point where a defense attorney will reasonably decide that a [certain] strategy is in order, thus making particular investigations unnecessary....Those decisions are due a heavy measure of deference." *Cullen*, 131 S. Ct. at 1407 (reversing grant of habeas relief on ineffective assistance of counsel claim) (citations omitted). The fact that counsel's strategy was ultimately unsuccessful does not mean that counsel was constitutionally ineffective. *See Moss v. Hofbauer*, 286 F.3d 851, 859 (6th Cir. 2002) ("an ineffective-assistance-of-counsel claim cannot survive so long as the decisions of a defendant's trial counsel were reasonable, even if mistaken").

Second, Petitioner has not shown that he was prejudiced by counsel's conduct. He has offered no affidavit or other evidence to demonstrate that Martinez would have provided favorable testimony. Conclusory allegations without evidentiary support do not provide a basis for habeas relief. *See Cross v. Stovall*, 238 F. App'x 32, 39-40 (6th Cir. 2007); *Prince v. Straub*, 78 F. App'x 440, 442 (6th Cir. 2003); *Workman v. Bell*, 178 F.3d 759, 771 (6th Cir. 1998) (conclusory allegations of ineffective assistance of counsel do not justify habeas relief); *see also Washington*

*v. Renico*, 455 F.3d 722, 733 (6th Cir. 2006) (bald assertions and conclusory allegations do not provide a sufficient basis to hold an evidentiary hearing in habeas proceedings).   Petitioner has failed to establish that trial counsel was ineffective under the *Strickland* standard.  Habeas relief is not warranted on such a basis.

### D.    Procedural Default of Claims

Respondent contends that Petitioner's remaining claims concerning the effectiveness of defense counsel, his right to confront witnesses, his right to present a defense, the trial judge's ex parte communications with the jury, and his habitual offender enhancement are barred by procedural default because he first raised those claims on post-conviction collateral review and the state courts denied him relief pursuant to Michigan Court Rule 6.508(D).

Federal habeas relief is precluded on claims that a petitioner has not presented to the state courts in accordance with the state's procedural rules. *See Wainwright v. Sykes*, 433 U.S. 72, 85-87 (1977).  The doctrine of procedural default is applicable when a petitioner fails to comply with a state procedural rule, the rule is actually relied upon by the state courts, and the procedural rule is "adequate and independent." *White v. Mitchell*, 431 F.3d 517, 524 (6th Cir. 2006); *see also Howard v. Bouchard*, 405 F.3d 459, 477 (6th Cir. 2005); *Coleman v. Mitchell*, 244 F.3d 533, 539 (6th Cir. 2001).  The last explained state court judgment should be used to make this determination. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-05 (1991).  If the last state judgment is a silent or unexplained denial, it is presumed that the last reviewing court relied upon the last reasoned opinion. *Id.*

Petitioner first presented these claims to the state courts in his motion for relief from judgment.  The Michigan Supreme Court denied relief pursuant to Michigan Court Rule 6.508(D), which provides, in part, that a court may not grant relief to a defendant if the motion for relief from

judgment alleges grounds for relief which could have been raised on direct appeal, absent a showing of good cause for the failure to raise such grounds previously and actual prejudice resulting therefrom. *See* MICH. CT. R. 6.508(D)(3). The Sixth Circuit has held that the form order used by the Michigan Supreme Court to deny leave to appeal in this case is unexplained because its citation to Michigan Court Rule 6.508(D) is ambiguous as to whether it refers to a procedural default or a rejection on the merits. *See Guilmette v. Howes*, 624 F.3d 286, 291-92 (6th Cir. 2010) (en banc). Consequently, under *Guilmette*, the Court must "look through" the unexplained order of the Michigan Supreme Court to the state trial court's decision to determine the basis for the denial of state post-conviction relief.

In this case, the state trial court clearly denied relief on procedural grounds. The trial court cited Michigan Court Rule 6.508(D)(3) and concluded that Petitioner had failed to demonstrate good cause and actual prejudice because his underlying claims lacked merit and no miscarriage of justice had occurred. Accordingly, Petitioner's claims concerning the effectiveness of defense counsel, his right to confront witnesses, his right to present a defense, the trial judge's ex parte communications with the jury, and his habitual offender enhancement are procedurally defaulted.

A state prisoner who fails to comply with a state's procedural rules waives the right to federal habeas review absent a showing of cause for noncompliance and actual prejudice resulting from the alleged constitutional violation, or a showing of a fundamental miscarriage of justice. *See Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991); *Nields v. Bradshaw*, 482 F.3d 442 (6th Cir. 2007); *Gravley v. Mills*, 87 F.3d 779, 784-85 (6th Cir. 1996).

Petitioner asserts ineffective assistance of appellate counsel as cause to excuse his default. In order to establish ineffective assistance of counsel, the petitioner must show "that counsel's

22

performance was deficient ... [and] that the deficient performance prejudiced the defense."

*Strickland v. Washington*, 466 U.S. 668, 687 (1984); *O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th

Cir. 1994). In determining whether counsel's performance was deficient,

> [t]he court must ... determine whether, in light of all the circumstances, the
> identified acts or omissions were outside the wide range of professionally competent
> assistance . . . . At the same time, the court should recognize that counsel is strongly
> presumed to have rendered adequate assistance and made all significant decisions
> in the exercise of reasonable professional judgment.

*Strickland*, 466 U.S. at 690. Judicial scrutiny of counsel's performance is thus "highly deferential."

*Id*. at 689. The defense is prejudiced only if "there is a reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.

It is well-established that a criminal defendant does not have a constitutional right to have

appellate counsel raise every non-frivolous issue on appeal. *See Jones v. Barnes*, 463 U.S. 745, 751

(1983). The Supreme Court has explained:

> For judges to second-guess reasonable professional judgments and impose on
> appointed counsel a duty to raise every "colorable" claim suggested by a client
> would disserve the ... goal of vigorous and effective advocacy .... Nothing in the
> Constitution or our interpretation of that document requires such a standard.

*Id*. at 754.

Strategic and tactical choices regarding which issues to pursue on appeal are "properly left

to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th Cir.

1990). In fact, "the hallmark of effective appellate advocacy" is the "process of 'winnowing out

weaker arguments on appeal and focusing on' those more likely to prevail." *See Smith v. Murray*,

477 U.S. 527, 536 (1986) (quoting *Barnes*, 463 U.S. at 751-52). "Generally, only when ignored

issues are clearly stronger than those presented will the presumption of effective assistance of

23

appellate counsel be overcome." *Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir. 2002). Appellate counsel may deliver deficient performance and prejudice a defendant by omitting a "dead-bang winner," defined as an issue which was obvious from the trial record and would have resulted in reversal on appeal. *See Meade v. Lavigne*, 265 F. Supp. 2d 849, 870 (E.D. Mich. 2003).

Petitioner has failed to show that by omitting the claims presented in his motion for relief from judgment, appellate counsel's performance fell outside the wide range of professionally competent assistance. Appellate counsel presented legitimate issues on direct appeal, including claims concerning the denial of substitute counsel, the right to confront witnesses, and the effectiveness of trial counsel. Such issues, although ultimately unsuccessful, were substantial. The claims presented in the motion for relief from judgment are not obviously stronger than the ones raised by appellate counsel on direct appeal. To be sure, the trial court, in considering the prejudice component of the cause and prejudice test, found that the claims lacked merit. Petitioner has thus failed to demonstrate that appellate counsel was ineffective so as to establish cause to excuse his procedural default.

The Court need not address the issue of prejudice when a petitioner fails to establish cause to excuse a procedural default. *See Smith*, 477 U.S. at 533; *Long v. McKeen*, 722 F.2d 286, 289 (6th Cir. 1983). Nonetheless, the Court notes that it would find that the defaulted claims lack merit for the reasons stated by the trial court in denying Petitioner's motion for relief from judgment.

Lastly, Petitioner has not demonstrated that a fundamental miscarriage of justice has occurred. The miscarriage of justice exception requires a showing that a constitutional violation probably resulted in the conviction of one who is actually innocent. *See Murray v. Carrier*, 477 U.S. 478, 479-80 (1986). To be credible, such a claim of actual innocence requires a petitioner to

24

support the allegations of constitutional error with new reliable evidence that was not presented at trial. *Schlup v. Delo*, 513 U.S. 298, 324 (1995). Actual innocence means factual innocence, not mere legal insufficiency. *Bousley v. United States*, 523 U.S. 614, 623 (1998). Petitioner has made no such showing. These claims are thus barred by procedural default, lack merit, and do not warrant habeas relief.

### E.     Ineffective Assistance of Appellate Counsel Claim

Petitioner also seems to assert an independent claim that he is entitled to habeas relief because appellate counsel was ineffective for failing to raise the foregoing defaulted issues on direct appeal. Petitioner is not entitled to relief on any such claim. As explained *supra*, he has failed to establish that appellate counsel was ineffective under the *Strickland* standard – and the defaulted claims lack merit. Habeas relief is not warranted on this claim.

## V.     Conclusion

For the reasons stated, the Court concludes that Petitioner is not entitled to federal habeas relief on the claims contained his habeas petition and the petition must therefore be denied.

Before Petitioner may appeal the Court's decision, a certificate of appealability must issue. *See* 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a court relief on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the court's assessment of the claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In

25

applying this standard, a court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merits. *Id.* at 336-37. When a court denies relief on procedural grounds without addressing the merits, a certificate of appealability should issue if it is shown that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the court was correct in its procedural ruling. *Slack*, 529 U.S. at 484-85.

Having conducted the requisite review, the Court concludes that Petitioner has failed to make a substantial showing of the denial of a constitutional right as to his habeas claims and that reasonable jurists could not debate the correctness of the Court's procedural ruling. A certificate of appealability is not warranted. The Court further concludes that Petitioner should not be granted leave to proceed *in forma pauperis* on appeal as any appeal cannot be taken in good faith. *See* Fed. R. App. P. 24(a).

Accordingly;

**IT IS ORDERED** that the petition for a writ of habeas corpus is **DENIED** and **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that a certificate of appealability and leave to proceed *in forma pauperis* on appeal are **DENIED**.

PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

DATED: 12-8-11